**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Michael O'Sullivan and Hampton Dream Properties, LLC, <br><br> Plaintiffs, <br><br> -v- <br><br> PHH Mortgage Corporation and PHH Mortgage Services d/b/a PHH Mortgage, <br><br> Defendants. | 2:22-cv-4420 (NJC) (ARL) |

<u>**MEMORANDUM AND ORDER**</u>

NUSRAT J. CHOUDHURY, United States District Judge:

On June 29, 2022, Plaintiffs Michael O'Sullivan ("O'Sullivan") and Hampton Dream Properties, LLC ("HDP," collectively, "Plaintiffs") brought this action in the Supreme Court of the State of New York, Suffolk County (the "State Court"). (Summons Compl., ECF No. 1-2.) Plaintiffs bring claims under New York common law for breach of contract and breach of the covenant of good faith and fair dealing against Defendants PHH Mortgage Corporation and PHH Mortgage Services d/b/a PHH Mortgage (collectively, "PHH")[1] stemming from a purported contract for a short payoff[2] of a property located at 96 Manor Drive, Shirley, New York 11967

---

[1] The Court understands that PHH Mortgage Corporation does business as "PHH Mortgage Services" and that "PHH Mortgage" is not "a proper assumed identity" for PHH Mortgage Corporation. (Not. Removal at 1 n.1, ECF No. 1.) Nevertheless, there is functionally only one Defendant in this action, and the Court will refer to it as "PHH."

[2] In contrast to a short sale in which a mortgaged property is sold to a buyer "for less than[] what is owed on the mortgage account" and "the sale proceeds" are used "to settle the full liability owed," a short payoff permits *the borrower* to pay the mortgagee less than what is owed on the mortgage account to settle the account and retain the property. (ECF No 29-6 at 6.; Reply at 6; *see also* ECF No. 29-13.)

(the "Subject Property") against which PHH held a mortgage. (*Id.*) Plaintiffs seek specific performance,[3] money damages, and attorneys' fees. On July 27, 2022, PHH removed the action to federal court, invoking this Court's diversity jurisdiction. (Not. Removal, ECF No. 1.)

PHH has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), principally arguing that, based on the undisputed record, there was no contract between the PHH and Plaintiffs for a short payoff of the Subject Property, and that even if such a contract was formed, Plaintiffs were neither parties to, nor intended third party beneficiaries of, the purported contract. (Not. Mot., ECF No. 29; Mem. L. Supp. Defs.' Mot. Summ. J. ("Mem."), ECF No. 29-17.)

The undisputed facts in the record establish that Plaintiffs and PHH did not form a contract for a short payoff of the Subject Property. Plaintiffs fail to identify any evidence in the record giving rise to a material question of fact as to whether Plaintiffs reached an agreement with any parties—whether Plaintiffs and/or the Non-Party Borrowers—about the identities of the parties and source of funds for the proposed short payoff, both of which are material terms for such a short payoff agreement. Because the record fails to give rise to a question of fact about the existence of an agreement—an essential element for Plaintiffs' breach of contract claim—no reasonably jury could find for Plaintiffs on this claim. Moreover, even if there is a question of

---

[3] Plaintiffs plead specific performance as their first cause of action. (Compl. ¶¶ 19–22.) Although courts in this Circuit have expressed different views as to whether specific performance may be pled as a cause of action separate from breach of contract or whether it is a remedy to a breach of contract claim, there is agreement that a valid contract must exist for a court to consider ordering specific performance. *Compare Nortek Inc. v. ITT LLC*, No. 21-cv-3999, 2025 WL 588226, at *7 (S.D.N.Y. Feb. 24, 2025) ("[S]pecific performance is a remedy, and a remedy itself cannot be a cause of action."), *with Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737 F. Supp. 3d 195, 207 n.4 (S.D.N.Y. 2024) ("New York courts routinely recognize actions for specific performance, particularly in disputes over real property."). I treat Plaintiffs' first cause of action for specific performance as a remedy sought for Plaintiffs' breach of contract claim.

fact as to the existence of a contract for a short payoff of the Subject Property, that contract is barred by New York's Statute of Frauds because there is no writing that contains all material terms of the purported agreement. Thus, PHH merits summary judgment on the breach of contract claim for this reason as well. Plaintiffs' claim for the implied breach of the covenant of good faith and fair dealing is entirely duplicative of the breach of contract claim and is therefore dismissed. Finally, since none of Plaintiffs' claims proceed past summary judgment, Plaintiffs cannot secure the remedies of specific performance or attorney fees. Accordingly, I grant PHH's Motion for Summary Judgment in its entirety. (ECF No. 29.)

## JURISDICTION

As addressed in my April 25, 2025 Order, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). (Elec. Order, Apr. 25, 2025.) There is complete diversity of the parties because Plaintiffs O'Sullivan and Hampton Dream Properties, LLC are citizens of New York, and PHH is a citizen of New Jersey. (*Id*.) Moreover, the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a) because the Complaint seeks $250,000 in damages stemming from PPH's alleged breach of contract. (*Id*.; Order Show Cause, Feb. 21, 2025.)

## BACKGROUND

### I.    The Foreclosure Action

On December 28, 2016, PHH, represented by LOGS Legal Group LLP ("LOGS"),[4] commenced an action in New York state court (the "Foreclosure Action") against John Green and Traci Shapiro (the "Non-Party Borrowers") and Discover Bank seeking to foreclose a

---

[4] At the time the Foreclosure Action was filed, LOGS was known as "Shapiro, DiCaro, and Barak, LLC." (Thompson Decl. ¶ 6.)

mortgage on the Subject Property executed by the Non-Party Borrowers. Pls.' Counterstatement of Facts ("Pls.' Counterstatement") ¶ 1, ECF No. 29-22; *see also* ECF No. 29-2; Complaint, *PHH Mortgage Corp. v. John Green*, No. 621133/2016 (N.Y. Sup Ct. Jan 9, 2020), NYSCEF No. 1.[5] On March 22, 2019, PHH was granted summary judgment in the Foreclosure Action, and the state court entered an Order of Reference appointing a referee to determine the amount due to PHH and whether the Subject Property should be sold as one or multiple parcels. ECF No. 29-4; Summ. J. & Order Reference, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Apr. 4, 2019), NYSCEF No. 44. On January 7, 2020, the state court granted PHH Judgment of Foreclosure and Sale. ECF No. 29-5; Order Confirming Referee Report & J. Foreclosure & Sale, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Jan. 9, 2020), NYSCEF No. 86.

## II.    The Short Payoff Negotiations

On December 3, 2021, the Non-Party Borrowers executed a deed conveying their interest in the Subject Property to HDP. (ECF No. 29-10 at 4–5.) The deed was not filed with the Suffolk County Clerk until June 29, 2022. (*Id.* at 3.)

---

[5] PHH's counsel in this action, Ashley R. Newman, attaches several documents filed in the Foreclosure Action to her declaration, but the attached copies do not contain the New York State Courts Electronic Filing ("NYSCEF") filing stamp indicating the filing date for each document. (*See* Newman Decl. Exs. 1–4, 6–8, 10, ECF Nos. 29-2, 29-3, 29-4, 29-5, 29-7, 29-8, 29-9, 29-11.) In the Newman Declaration, PHH appears to request that I take judicial notice of the Foreclosure Action pursuant to Fed. R. Civ. P. 201(b)(2). (Newman Decl. 1 n.1, ECF No. 29-1.) "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 (2d Cir. 2024), *cert. denied,* No. 24-768, 2025 WL 1678984 (June 16, 2025). Accordingly, I take judicial notice of the existence of the Foreclosure Action and the documents filed in that case. Throughout this Memorandum and Order, I directly cite the documents filed and issued in the Foreclosure Action, in addition to the unstamped versions filed as attachments to the Newman Declaration, so that the dates of the filings are clear.

On December 17, 2021, PHH sent the Non-Party Borrowers a document entitled "Conditional Approval of the Short Sale Request" ("Conditional Approval"). (ECF No 29-6 at 4; *see also* Pls.' Counterstatement ¶ 5.) The Conditional Approval informed the Non-Party Borrowers that PHH was "offering an opportunity to pursue a short sale" of the Subject Property. (ECF No. 29-6 at 4.)

On February 18, 2022, Defendants filed a Notice of Sale through which the court-appointed referee scheduled the public auction of the Subject Property to take place on March 28, 2022. ECF No. 29-7; Notice Sale, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Feb. 18, 2020), NYSCEF No. 95.

More than two weeks before the scheduled public auction, on March 10, 2022, Christopher Thompson ("Thompson") appeared as counsel for the Non-Party Borrowers in the Foreclosure Action and filed a proposed order to show cause that would, among other things, temporarily enjoin PHH from auctioning or selling the Subject Property. ECF No. 29-8; Consent Change Attorney, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Mar. 10, 2024), NYSCEF No. 98; Order Show Cause (Proposed), *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Mar. 10, 2024), NYSCEF No. 99. On March 11, 2022, the state court issued the proposed order to show cause. Order Show Cause (Signed), *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Mar. 11, 2024), NYSCEF No. 104.

On March 30, 2022, Thompson sent an email to Nichole Rizzo at a LOGS email address inquiring:

> For Settlement Purposes. Previously there was a short pay-sale of $104,000 with $94,000 net to the bank. It was my understanding that was agreed upon in principal but not completed. Can we put that deal back on the table as a short pay-off? Thank you.

(ECF No. 29-13 at 2–3.) The subject of Thompson's email contained a reference to the Foreclosure Action: "Re: NYSCEF Alert: Suffolk - Real Property - Mortgage Foreclosure - Residential - Entry of Order/Judgment 621133/2016 (PHH Mortgage Corporation - v. - John Green et al)." (*Id.* at 3.)

On April 8, 2022, Maxwell Wagner ("Wagner"), a legal assistant with LOGS, responded to Thompson's email. (*Id.* at 2; Wagner Decl. ¶ 1, ECF No 29-12.) Wagner indicated that LOGS had forwarded Thompson's request to PHH, LOGS's then client, and that PHH wanted "clarification if the borrower is looking to sell or keep the property." (ECF No. 29-13 at 2.) Thompson replied on the same day, stating, "For Settlement Purposes. The offer is based on a short payoff where borrower keeps the property." (*Id.* at 2.) Both Wagner and Thompson used the names of the Non-Party Borrowers—"Green, John and Shapiro, Traci"—as the subject line of their April 8, 2022 emails. (*Id.* at 2.)

On April 11, 2022, Wagner emailed Thompson using the same subject line. (ECF No. 29-15 at 2.) Wagner's email stated, "Please be advised that our client has requested that you provide proof of funds and POC details for an interior BPO [(Buyer's Price Opinion)], pursuant to your short payoff offer. Thank you." (*Id.* at 2–3; *see also* Compl. ¶ 14.)

On April 13, 2022, the state court vacated the temporary stay on the sale of the Subject Property and ordered PPH to instruct the court-appointed referee to schedule the auction of the Subject Property within sixty days. Order, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. Apr. 13, 2022), NYSCEF No. 110.

On April 14, 2022, Thompson replied to Wagner's email indicating that PHH could contact him or his assistant. (*Id.* at 2.) On that same day, Wagner responded by email that he had forwarded Thompson's email to PHH and reiterated that PHH "*still require[s] proof of funds* in

order to move forward with this process." (*Id.* at 2 (emphasis added).) Each of these emails continued to use the same subject line containing the names of the Non-Party Borrowers: "Green, John and Shapiro, Traci." (*Id.*)

On April 18, 2022, Wagner emailed Thompson, again referring to the Non-Party Borrowers in the subject line of the email: "Green, John and Shapiro | Proof of Funds." (ECF No. 29-9 at 50.) Wagner wrote, "Please be advised that [PHH] has reached out and approved the settlement offer. In addition, please be advised that they have also requested that you provide proof of funds when you are able." (*Id.*) The parties dispute whether "PHH required that proof of funds come only from [the Non-Party] Borrowers." (Pls.' Counterstatement ¶ 13, Defs.' Counterstatement Resp. ¶ 19.)

Plaintiffs characterize Wagner's April 18, 2022 email as PHH's acceptance of Plaintiffs' short payoff offer. (Defs.' Responsive Statement Pls.' Counterstatement ("Defs.' Counterstatement Resp.") ¶ 18, ECF No. 29-26; Thompson Decl. ¶ 9, ECF No. 29-20.) PHH characterizes the entire set of emails between Thompson and Wagner from March 30, 2022 through April 18, 2022 as a negotiation in which the Non-Party Borrowers "sought . . . a short payoff" and PHH made clear "any short payoff offer" would be "subject to providing proper proof of funds." (Defs.' Counterstatement Resp. ¶ 18.)

At some point between April 18, 2022 and April 25, 2022, Thompson provided PHH a "picture" of a TD Bank statement from an account belonging to "HAMPTON DREAM PROPERTIES LLC." (ECF No. 29-9 at 47, 49.) On April 25, 2022, Wagner requested by email that Thompson resend the document as a PDF. (*Id.* at 47.) On May 3, 2022, Thompson sent Wagner an email with the subject line "PDF proof of funds," which attached a PDF version of the TD Bank statement for HDP. (*Id.*, *see also id.* at 49; Pls.' Counterstatement ¶ 14.) On May

12, 2022, Thompson replied, "We have an agreed settlement and I have sent proof of funds. What is [sic] our next steps?" (*Id.* at 50.)

PHH contends that, on May 17, 2022, it "advised that [it] denied the short pay offer" through an email from LOGS to Thompson. (Defs.' Counterstatement Resp. ¶ 23 (citing Wagner Decl. ¶ 12).) Plaintiffs assert that PHH did not respond to Thompson's May 12, 2022 email. (Defs.' Counterstatement Resp. ¶ 23 (citing Thompson Decl. ¶ 11).) Plaintiffs also dispute that LOGS "advised" that PHH declined the short pay offer on May 17, 2022 (Pl.'s Counterstatement ¶ 15; Opp'n at 4).[6] Additionally, the parties dispute whether Thompson's email communications with PHH through LOGS were made on behalf of the Non-Party Borrowers or on behalf of *both* Plaintiffs *and* the Non-Party Borrowers. (Pls.' Counterstatement ¶¶ 10–11; Defs.' Counterstatement Resp. ¶ 20, 22; *see also* Mem. at 4; Opp'n at 6.)

On June 6, 2022, the court-appointed referee scheduled the public auction of the Subject Property for July 11, 2022. Notice Sale, *PHH Mortgage Corp.*, No. 621133/2016 (N.Y. Sup Ct. June 6, 2022), NYSCEF No. 113.)

### III.    The Transfer and Sale of the Subject Property

On June 29, 2022, the deed by which the Non-Party Borrowers transferred the Subject Property to "Hampton Dream Properties, LLC" was recorded with the Suffolk County Clerk. (ECF No. 29-10 at 3.) On July 11, 2022, the foreclosure auction of the Subject Property was held

---

[6] PHH relies on a paragraph of the Wagner Declaration for the assertion that LOGS informed Thompson on May 17, 2022 that PHH declined the short pay offer, but the Wagner Declaration does not cite any documentary evidence to support this fact. (Pls.' Counterstatement ¶ 15; Opp'n at 4.) As discussed below, Wagner's attestation to this fact is hearsay and PHH does not show that any exception to the rule against hearsay applies such that this Court may rely on the fact in ruling on PHH's Motion for Summary Judgement. *See infra* Discussion § I.B.

by the state-court appointed referee, and the Subject Property was sold to HDP for $246,500.00. (Pls. Counterstatement ¶ 17; *see also* ECF No. 29-11 at 4.)

## PROCEDURAL HISTORY

On June 29, 2022, Plaintiffs commenced this action in the State Court. (Summons Compl.) On July 7, 2022, Plaintiffs filed an Order to Show Cause in the State Court seeking a preliminary injunction enjoining Defendant and, "all others on their behalf," from selling the Subject Property. (ECF No. 29-9.) On July 27, 2022, Defendants removed the action to this Court, invoking this Court's diversity jurisdiction. (Not. Removal.) The case was originally assigned to District Judge Gary R. Brown. (Elec. Order, July 27, 2022.) On October 10, 2023, the case was reassigned to my docket. (Elec. Order, Oct. 10, 2023.)

On October 30, 2023, PHH timely filed a letter seeking a conference in anticipation of filing a summary judgment motion and a supporting Rule 56.1 Statement of Undisputed Facts. (ECF Nos. 23, 23-1; *see also* Elec. Order, Oct. 23, 2023.) Plaintiffs timely filed an opposition letter and Rule 56.1 Counterstatement of Facts on November 9, 2023. (ECF Nos. 24, 24-1.) The Court ordered PHH to file a response to Plaintiffs' Counterstatement of Facts. (Elec. Order, Nov. 7, 2023.) PHH filed a timely Responsive Statement to Plaintiffs' Counterstatement on November 7, 2023. (ECF No. 25.)

On November 7, 2023, I held a pre-motion conference with the parties. (*See* Min. Entry, Nov. 9, 2023.) At the conference, I stated my initial view that "based on the parties' Rule 56.1 Statements[,] the parties did not have a contract," and "that there do[] not seem to be issues of material fact concerning the lack of a contract." (*Id*.) I noted that "summary judgment for [PHH] may be warranted, but that a final determination required full briefing and a close look at the record." (*Id.*) Accordingly, I set a briefing schedule for PHH's summary judgment motion. (*Id.*)

Pursuant to the briefing schedule and the Court's recommended bundling practice, the parties filed their submissions on PHH's Motion for Summary Judgement on January 26, 2024. (Not. Mot.; Mem.; Mem. L. Opp'n Defs.' Mot. Summ. J. ("Opp'n"), ECF No. 29-23; Reply Mem. L. Supp. Defs.' Mot. Summ. J. ("Reply"), ECF No. 29-25.)

Along with its motion, PHH filed a Memorandum in Support (Mem.), a Rule 56.1 Statement of Undisputed Facts ("Rule 56.1 Statement") (Rule 56.1 Statement, ECF No. 29-18), and the declaration of its counsel, Ashley R. Newman ("Newman Declaration") (Newman Decl., ECF No. 29-1), with the following exhibits:

(1)    the Summons, Complaint, and other filings commencing the Foreclosure Action (ECF No. 29-2);

(2)    the Answer filed in the Foreclosure Action by John Green, one of the Non-Party Borrowers (ECF No. 29-3);

(3)    a copy of the New York Supreme Court's order granting PHH summary judgment and entering an Order of Referee in the Foreclosure Action (ECF No. 29-4);

(4)    a copy of the New York Supreme Court's Judgment of Foreclosure and Sale in favor of PHH in the Foreclosure Action (ECF No. 29-5);

(5)    a copy of the Conditional Approval for a Short Sale provided by PHH to the Non-Party Borrowers (ECF No. 29-6);

(6)    a copy of the Notice of Sale in the Foreclosure Action (ECF No. 29-7);

(7)    a copy of the Consent to Change Attorneys filed in the Foreclosure Action by Non-Party Borrowers (ECF No. 29-8);

(8)    the Order to Show Cause and supporting documents filed by Plaintiffs in this action prior to the case's removal (ECF No. 29-9);

(9)    a copy of the deed, recorded June 29, 2022, by which the Non-Party Borrowers conveyed the Subject Property to HDP (ECF No. 29-10); and

(10)    a copy of the referee's deed in the Foreclosure Action, dated August 12, 2022, conveying the Subject Property to HDP following the July 11, 2022 foreclosure auction (ECF No. 29-11).

Plaintiffs filed a Memorandum in Opposition ("Opposition") (Opp'n), Plaintiffs' Counterstatement of Facts ("Plaintiffs' Counterstatement") (Pls. Counterstatement), and a declaration by Plaintiffs' counsel, Thompson, ("Thompson Declaration") (Thompson Decl.), attaching the Notice of Removal in this action (Thompson Decl. Ex. 1, ECF No. 29-21; *see also* ECF No. 1). PHH filed a Reply Memorandum of Law in Support of its Motion for Summary Judgment ("Reply") (Reply) and a Responsive Statement to Plaintiffs' Counterstatement (Defs.' Counterstatement Resp.). PHH's Motion is therefore fully-briefed.

## LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).[7] "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also*

---

[7] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

*Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024) (summary order). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166.

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant plaintiff, no reasonable jury could find in the plaintiff's favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

## DISCUSSION

As a threshold matter, Plaintiffs challenge certain of PHH's evidentiary submissions filed in support of the Motion for Summary Judgment on several grounds. Those challenges are largely denied. As addressed below, I may rely on the entirety of the Newman Declaration and all but paragraph twelve of the Wagner Declaration in resolving the PHH's Motion for Summary Judgment.

Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims fail as a matter of law because the undisputed facts show that the parties did not form a contract for the short payoff of the Subject Property. There was simply no meeting of the minds concerning the essential terms of the contract, including the identities of the parties to the

contract and the essential terms. Since the parties did not form a contract, Plaintiffs cannot succeed on the breach of contract claim at trial. Moreover, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed as duplicative of the breach of contract claim. Because Plaintiffs cannot prevail on any of their claims, Plaintiffs cannot secure the remedies of specific performance or attorneys' fees as a matter of law.

## I.    Reliance on Defendants' Declarations and Attached Exhibits

As a preliminary matter, Plaintiffs dispute several facts set forth in PHH's Rule 56.1 Statement, arguing that the Newman Declaration and Wagner Declaration, both of which are extensively cited in PHH's Rule 56.1 Statement, do not rely on admissible evidence for the stated facts and are not themselves admissible evidence. (Opp'n at 1, 4; Pls.' Counterstatement ¶¶ 3–4, 6, 15.) For the following reasons, PHH properly relies on facts set forth in both the Newman Declaration and the Wagner Declaration, with the exception of facts set forth in paragraph twelve of the Wagner Declaration.

Rule 56 permits the use of an affidavit or declaration "to support or oppose a motion" for summary judgment if the affidavit or declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Due to the admissibility requirement, "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [an] affidavit" supporting or opposing summary judgment. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citing Fed. R. Civ. P 56(e).). Additionally, "it is 'well established that an attorney's affidavit *can* be used, in connection with a summary judgment motion, to place documents produced in discovery before the Court.'" *Mausner v. Mausner*, No. 23-cv-994, 2024 WL 4758563, at *2 (S.D.N.Y. Sept. 26, 2024)

(emphasis in original) (quoting *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016)), *appeal dismissed* (Jan. 6, 2025).

   A.   Newman Declaration

Plaintiffs argue that the facts set forth in the Newman Declaration cannot be relied upon to support PHH's Rule 56.1 Statement because Newman was not counsel of record for PHH in the Foreclosure Action and lacks personal knowledge of the settlement negotiations giving rise to this action. (*Id.*) Plaintiffs also contend that Newman cannot lay the foundation for LOGS's business records, so any portions of her declaration that cite to documents that were not produced by her firm, Hinshaw & Culbertson LLP, and are not in the public record, are inadmissible. (*Id.*) Without citing any caselaw or other legal authority, Plaintiffs assert that "[t]o the extent that [Newman] characterizes certain documents as favoring Defendants here, any such interpretation must be rejected as a matter of law." (*Id.*)

In response, PHH argues that attorney declarations "can function as 'vehicles to introduce evidence produced in discovery into the record in a cohesive manner.'" (Reply at 3 (quoting *Genon Mid-Atl., LLC v. Stone & Webster, Inc.*, No. 11-cv-1299, 2012 WL 1372150, at *1 (S.D.N.Y. Apr. 18, 2012)).) PHH contends that the Newman Declaration is permissibly used to introduce the pleadings from the Foreclosure Action and that "any characterization" of the evidence attached to the declaration is addressed within PHH's Memorandum of Law, not in the facts set forth in the Newman Declaration. (*Id.*)

The Newman Declaration is composed of eleven paragraphs: one identifying Newman as PHH's counsel and describing the purpose of the declaration; and ten paragraphs identifying evidence attached to the declaration as exhibits. (*See generally* Newman Decl.) Contrary to Plaintiffs' characterization, the Newman Declaration simply "places documents produced in

discovery before the Court" in support of PHH's Motion for Summary Judgment, and PHH may therefore rely on it to support its Motion and the facts set forth in its Rule 56.1 Statement. *See Mausner*, 2024 WL 4758563, at \*2; *Pace*, 171 F. Supp. 3d at 272.

### A. Wagner Declaration

With respect to the Wagner Declaration, Plaintiffs argue that it "contains conclusory allegations that do not eliminate material issues of triable fact and are unsupported by emails or other written evidence in support of Defendants." (Opp'n at 4.) Plaintiffs assert that "there is no email demanding proof of funds from the" Non-Party Borrowers or indicating "that the proof of funds supplied w[as] rejected and the approval of the short pay-off [was] withdrawn." (*Id.*) Plaintiffs argue that PHH's allegation that its counsel advised Thompson that PHH had denied the short pay offer is a "false allegation" unsupported by any admissible record evidence. (*Id.* at 4–5.)

PHH argues the Wagner Declaration meets the requirements of Rule 56, Fed. R. Civ. P., which permits the use of affidavits and declarations to "set forth and dispute material facts." (Reply at 3.) According to PHH, Wagner has direct personal knowledge of the facts to which he attests in his declaration because he was "one of the individuals that Mr. Thompson was communicating with via email in attempting to negotiate a settlement on behalf of the Non-Parties." (*Id.* at 4.) PHH argues that Wagner is competent to testify at trial and that the declaration is not conclusory because "it specifically authenticates and attaches the email communications exchanged with Mr. Thompson that constitute the very facts at issue on this motion." (*Id.*) With respect to Wagner's specific statement that PHH "advised" that it denied the offer for a short pay off, PHH argues that the Wagner Declaration is admissible evidence under

15

28 U.S.C. § 1746 because Wagner made the statements in the declaration under the penalty of perjury in support of a summary judgment motion. (*Id.*)

The Wagner Declaration is composed of twelve paragraphs. The first paragraph identifies Wagner "as a legal assistant" with LOGS and indicates that LOGS served as PHH's counsel in the Foreclosure Action. (Wagner Decl. ¶ 1.) In paragraphs two through six and eight through eleven, Wagner attests to facts regarding the Foreclosure Action and the email correspondence between Thompson and Wagner, relying on evidence attached as exhibits to either the Wagner Declaration or the Newman Declaration. (Wagner Decl. ¶¶ 2–6, 8–11.) Specifically, in paragraphs two through four, Wagner cites the Conditional Approval sent by PHH during the pendency of the Foreclosure Action and the filings in the Foreclosure Action. (*Id.* ¶¶ 2–4.) In paragraphs five, six, and eight through eleven of the declaration, Wagner addresses facts set forth in the emails between himself and Thompson, which Plaintiffs allege form the purported contract at issue in this action, as well as documents filed by Thompson in the Foreclosure Action, all of which are attached to the Wagner Declaration. (Wagner Decl. ¶¶ 5–11 (citing ECF Nos. 29-13, 29-14, 29-15; ECF No. 29-10 at 48–49).)

PPH may rely on the facts set forth in paragraphs one through eleven of the Wagner Declaration and corresponding factual statements in its Rule 56.1 Statement. As discussed in detail below, Wagner attests to the facts set forth in paragraphs two through six and eight through eleven of his declaration relying on his personal knowledge and admissible evidence in the record. Moreover, with respect to the facts set forth in paragraph seven of the declaration, Wagner attests to those facts based on his personal knowledge and Plaintiffs do not deny or controvert them, and they are therefore properly considered in resolving PHH's summary judgment motion.

16

First, the business records exception to the hearsay rule applies to the documents on which Wagner relies for the facts set forth in paragraphs two, five, six, and eight through eleven of his declaration. *See* Fed. R. Evid. 803(6). In paragraph two, Wagner cites the Conditional Approval, and in paragraphs five, six, and eight through eleven, Wagner relies on emails between himself and Thompson. (Wagner Decl. ¶ 2, 5–6 8–11.) Because Wagner served as part of PHH's counsel in the Foreclosure Action, he has personal knowledge sufficient to testify at trial about the authenticity of the Conditional Approval and email correspondence in which he was involved in his role as a LOGS employee. He would also be able to lay the foundation for the admission of these documents as business records by testifying that they were created as a part of LOGS's regularly conducted business activities. Accordingly, all of these documents would meet the requirements of the business records exception to the rule against hearsay, Rule 803(6), Fed. R. Evid., and Wagner properly relies on them as support for the facts set forth in paragraphs two, five, and eight through eleven of his declaration.

Additionally, Plaintiffs argue in their opposition submissions that the emails from Thompson to Wagner were sent by Thompson in the course of his representation of Plaintiffs, who are a party to this action. (Opp'n at 6.) Although Plaintiffs dispute that Thompson ever made them aware of that fact, Plaintiffs' own characterization of Thompson's emails as made on their own behalf render Thompson's emails party representative admissions that fall under the exception to the hearsay rule set forth in Rule 801(d)(2)(C)-(D), Fed. R. Evid. (*See* Wagner Decl. ¶¶ 5, 6, 11 (relying on Thompson's emails to Wagner in the course of Foreclosure Action settlement negotiations).) Furthermore, the emails from Wagner to Thompson, to which Thompson subsequently responded, also fall within an exception to the hearsay rule as party adoptive statements. *See* Fed. R. Evid. 801(d)(2)(B); *see* Wagner Decl. ¶¶ 6, 8–9 (relying on

17

Wagner's emails to Thompson, to which (according to Plaintiffs) Thompson responded on behalf of Plaintiffs, rather than the Non-Party Borrowers). Thompson's responsive emails "only make sense in the context of adopting" Wagner's statements in the emails. *United States v. Ho*, 984 F.3d 191, 208 (2d Cir. 2020).

Second, in paragraph three of his declaration, Wagner relies on the February 18, 2022 Notice of Sale that PHH filed in the Foreclosure Action. (Wagner Decl. ¶ 3.) Plaintiffs do not dispute the fact that PHH filed the Notice of Sale or even the contents of the document; they only dispute the assertion that "PHH Mortgage Corporation" filed the Notice of Sale on its own without "PHH Mortgage Services." (Pls' Counterstatement ¶ 1, 6.) This dispute does not concern a material fact, however, because the Court has recognized that PHH Mortgage Services is not a distinct entity, as addressed above. *See supra* note 1. Wagner thus properly relies on the Notice of Sale for the facts set forth in paragraph three of his declaration.

Third, in paragraph four of his declaration, Wagner relies on the Consent to Change Counsel filed by Thompson on behalf of Non-Party Borrowers in the Foreclosure Action. (Wagner Decl. ¶ 4.) Plaintiffs do not dispute that the document was filed, and that Thompson appeared as counsel for the Non-Party Borrowers in the Foreclosure Action. (Pls.' Counterstatement ¶ 7.) Accordingly, the document is a party admission and not hearsay. *See* Fed. R. Evid. 801(d)(2)(A), (C). Wagner properly relies on the document for the facts set forth in paragraph four of his declaration.

In paragraph seven of the declaration, Wagner attests, "At no time did Mr. Thompson disclose that he was representing or acting on behalf of anyone beyond the Non-Parties." (Wagner Decl. ¶ 7.) Although Wagner does not cite to other evidence in the record to support this statement, he attests to this fact based on his own personal knowledge. (*See id.* ¶ 1.)

Moreover, Plaintiffs do not dispute that Thompson did not disclose to Wagner that he was representing anyone other than the Non-Party Borrowers while negotiating the short payoff. (Pls.' Counterstatement ¶ 11.) Accordingly, the fact that Thompson did not disclose to Wagner that he was representing anyone other than the Non-Party Borrowers is deemed admitted. *See* Local Civil Rule 56.1(c) (Oct. 15, 2021) ("Each numbered paragraph in the statement of material facts . . . served by the moving party will be deemed to be admitted for purposes of the motion unless *specifically controverted* . . . by the opposing party.") (emphasis added))[8]; *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment for defendants where there was no genuine dispute as to the facts because the plaintiff failed to deny the factual assertions set forth in defendants' 56.1 statement); *Matter of Verplanck Fire Dist.*, 687 F. Supp. 3d 382, 386 n.1 (S.D.N.Y. 2023) (deeming a fact in the moving party's 56.1 statement admitted because the non-moving party failed to controvert the paragraph and only stated that it "lacks information to either admit or deny" the fact). Therefore, the facts set forth in paragraph seven of the Wagner Declaration are deemed undisputed for the purpose of analyzing PHH's Motion for Summary Judgment. Accordingly, PPH may rely on paragraphs one through eleven of the Wagner Declaration to support its Motion for Summary Judgment and factual assertions made in its Rule 56.1 Statement.

However, I reach a different conclusion with respect to the factual allegations set forth in paragraph 12 of the Wagner Declaration, where Wagner attests, without citing any documentary

---

[8] Since PHH filed its Motion for Summary Judgment on January 26, 2024, the Local Rules that were amended and adopted by the Board of Judges of the Eastern District of New York and the Southern District of New York and rendered effective on October 15, 2021 are the operative Local Rules governing PHH's Motion for Summary Judgment. *See Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 765 F. Supp. 3d 201, 213 (E.D.N.Y. 2025) (applying the Local Rules effective on the date of the motion's filing).

evidence in support: "On May 17, 2022, my office advised that [PHH] denied the short pay offer." (Wagner Decl. ¶ 12.) PHH relies on this statement to support the following assertion in its Rule 56.1 Statement: "On May 17, 2022, PHH's counsel advised that the short pay request was denied." (Rule 56.1 Statement ¶ 15.)  Although Wagner served as a LOGS legal assistant and the primary contact at LOGS communicating with Thompson during the short payoff negotiations, Wagner does not attest that he, himself, communicated PHH's decision to decline the short payoff to Thompson. (*See* Wagner Decl. ¶ 12) Nor does he identify anyone else at LOGS who "advised" Thompson that PHH declined the offer on May 12, 2022, or how they communicated this information. (*See id.*) Wagner also does not explain whether he personally observed another person at "[his] office" informing Thompson or anyone else of the decision or whether he learned about it after it the fact. (*Id.*) Accordingly, Wagner's statement that, on May 17, 2022, "[his] office" (presumably LOGS) "advised" that PHH "denied the short pay offer" amounts to an attestation about the content of an out-of-court statement by an unnamed person at LOGS to another unnamed person—presumably Thompson. The statement is hearsay because PHH seeks to use it for the truth of the matter asserted, namely, to prove the fact that someone at LOGS "advised" Thompson that PHH declined the short payoff offer on May 17, 2022. (Rule 56.1 Statement ¶ 15.) In response to Plaintiffs' argument that the statement is inadmissible hearsay, PHH has not identified any hearsay exception that would apply if Wagner offered this statement at trial. Accordingly, in support of its summary judgement motion, PPH may not rely on the facts asserted in paragraph twelve of the Wagner Declaration or the statement in its Rule 56.1 Statement that "[o]n May 17, 2022, PHH's counsel advised that the short pay request was denied."

20

## II.    Breach of Contract Claim

PHH moves for summary judgement on the breach of contract claim, arguing that it did not enter into a short payoff contract with any party, much less Plaintiffs. First, PHH contends that there was no acceptance as required for a contract because its request for proof of funds was a rejection of the offer conveyed by Thompson or, at best, a counteroffer that was never accepted. (Mem. at 10–16.) Second, PHH argues that there was no meeting of the minds as to material terms of the purposed contract, including the identities of the contracting parties. According to PHH, it could not have known that Thompson was representing Plaintiffs because the deed recording the Non-Party Borrowers' transfer of the Subject Property to Plaintiffs was recorded "*after* PHH advised Non-Parties' counsel (now counsel for Plaintiffs herein) that the short pay offer was denied." (Mem. at 7.) Third, PHH argues that to the extent that Thompson represented the Non-Party Borrowers *and Plaintiffs* during the email exchanges concerning the short sale payoff, as a matter of law, Thompson faced conflicts of interest that preclude such dual representation. (*Id.* at 7.) Fourth, PHH asserts that Plaintiffs "do not have standing to bring this action" because they were not parties to the purported contract and that Plaintiffs "do not have standing as third party beneficiaries." (*Id.* at 6, 8.)[9]

---

[9] Although PHH uses the word "standing," it does not appear to challenge Plaintiffs' Article III standing, but instead argues that PHH cannot enforce a contract to which it was neither a party nor a third party beneficiary. Thus, this fourth argument overlaps with PHH's second and third arguments as well. (*See Mem.* at 6–10.) Plaintiffs have Article III standing because they allege that they paid more for the Subject Property at auction than they would have through the purported short payoff agreement (injury-in-fact), that PHH's breach of the alleged short payoff agreement caused this injury (traceability), and that damages, specific performance, and attorneys' fees would redress those injuries (redressability). *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 45 (2d Cir. 2023) (Article III standing requires showing: "(1) that [the plaintiff] suffered an injury in fact, (2) that the injury is fairly traceable to Defendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Plaintiffs contend that material questions of fact preclude summary judgment for PHH on the breach of contract claim because the parties' have a "dispute as to promises made by representatives of" PHH during negotiations to settle the Foreclosure Action and because Plaintiffs "were the owners of record of the subject property" and were the parties whose proof of funds was shared with PHH. (Opp'n at 3.) Plaintiffs also argue that an enforceable contact was formed between Plaintiffs and PHH because there was a meeting of the minds as to the following material terms: (1) that the "agree-upon short payoff" would have resulted in the Non-Party Borrowers "no longer being parties in a foreclosure action with a potential deficiency judgment against them"; (2) that PHH "would be paid the certain sum of $94,000"; and (3) that Plaintiffs would clear PHH's mortgage from the title of the Subject Property. (*Id* at 3–4.) Finally, Plaintiffs contend that the emails between Wagner and Thompson "evidence the agreement." (*Id.* at 6–7 (citing *George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978)).) According to Plaintiffs, PHH has failed to rebut "the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties." (*Id.*)

On reply, PHH reiterates the arguments made in its moving brief and makes two additional arguments. First, PHH argues that Plaintiffs rely on insufficient evidence to defeat summary judgment, specifically Thompson's denial (1) "that proof of funds from the Non-Parties was required," (2) "that the rejection of the short [payoff] offer was communicated," and (3) "that he failed to represent Plaintiffs' involvement." (Reply at 5.) PHH also asserts that Plaintiffs have not offered any evidence regarding what Plaintiffs "believed was occurring in the negotiations with [PHH], the circumstances of their purchase of title from the Non-Part[y Borrowers], [the] reasons as to why the deed was not recorded immediately," or their waiver of

"any conflict presented by Plaintiffs' counsel's dual representation of a buyer (Plaintiffs) and a seller (Non-Part[y Borrowers])." (*Id.*)

A. <u>Applicable Law</u>

"In order to 'state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *TIG Ins. Co. v. Swiss Reinsurance Am. Corp.*, No. 21-cv-8975, 2025 WL 674269, at *3 (S.D.N.Y. Mar. 3, 2025) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see also Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024).

With respect to the first element—the existence of an agreement—"[i]t is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019). "The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* at 289. In a real estate transaction, the "price, identity of the parties and the parcel of real estate to be sold are material" terms. *Argent Acquisitions, LLC v. First Church of Religious Sci.*, 990 N.Y.S.2d 1, at 3 (N.Y. App. Div. 2014); *see also Alkholi v. Macklowe*, 858 F. App'x 388, 391–92 (2d Cir. 2021) (affirming district court holding that "there was no meeting of the minds on all essential terms" of a proposed contract where the underlying email exchanges did not contain "the material term of the identity of the obligor"). Other material terms include "the time and terms of payment, the required financing, the closing date, the quality of title to be conveyed, the risk of loss during the sale period, and adjustments for taxes and utilities." *S. Shore Ests., Inc. v. Guy Friedman Realty*

*Corp.*, 217 N.Y.S.3d 135, 140 (N.Y. App. Div. 2024) (citing *Cohen v. Holder*, 167 N.Y.S.3d 527, 529 (N.Y. App. Div. 2022)).

Whether parties have manifested agreement to all essential terms of a proposed contract is subject to the concept of "conditional acceptance," which refers to "a proposal to accept the offer subject to other conditions." *Kolmar Ams. Inc. v. Mycone Dental Supply Co.*, No. 21-cv-02361, 2021 WL 5054300, at *6 (S.D.N.Y. Nov. 1, 2021) (citing *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998)). Conditional acceptance "operates as a rejection or, at most, a counteroffer." *Id*.

B.  The Undisputed Record Shows that PHH Did Not Enter into a Short Payoff Contract

Applying the standards for contract formation under New York law to the record before me, the undisputed facts in the record establish that PHH and Plaintiffs did not enter into contract for a short payoff of the Subject Property for four reasons.

First, the undisputed facts show that PHH, through Wagner, communicated to Thompson an acceptance of the short payoff offer that was conditional on the provision of the proof of funds from the Non-Party Borrowers. (*See* Mem. at 13.) Under New York law, such a "conditional acceptance" "operates as a rejection or, at most, a counteroffer." *Kolmar Ams. Inc.*, 2021 WL 5054300, at *6. Following Thompson's initial email asking whether PHH would negotiate a short payoff (rather than a short sale) and Wagner's response asking whether the result of any settlement would enable the Non-Party Borrowers to retain the Subject Property, Wagner emailed Thompson on April 11, 2022: "Please be advised that our client has *requested that you provide proof of funds* and POC details for an interior BPO, pursuant to your short payoff offer." (ECF No. 29-15 at 2–3 (emphasis added).) On April 14, 2022, Wagner again reiterated via email to Thompson that PHH "*still require[s] proof of funds* in order to move

24

forward with this process." (*Id.* at 2 (emphasis added).) And on April 18, 2022, Wagner emailed Thompson: "Please be advised that [PHH] has reached out and approved the settlement offer. In addition, please be advised that they have *also requested that you provide proof of funds* when you are able." (ECF No. 29-9 at 50 (emphasis added).) In this last email, Wagner indicated that PHH "approved the settlement offer," but did not use the term "accept." (*Id.*) Moreover, Wagner also indicated that PHH continued to "request" proof of funds, following up on Wagner's earlier April 14, 2022 email that such proof was "still require[d]." (*Id.* at 50; ECF No. 29-15 at 2.)[10] These undisputed facts show that to the extent PHH communicated any acceptance of the short payoff offer through the April 18, 2022 email, that acceptance was conditional on the provision of a proof of funds and therefore constituted a rejection or counteroffer under New York law. *See Kolmar Ams. Inc.*, 2021 WL 5054300, at *6.

Plaintiffs' characterization of these emails between Wagner and Thompson as demonstrating PHH's unconditional acceptance of the short payoff offer is unpersuasive in light of Thompson's own characterization of the facts. (*See* Opp'n at 6, Defs.' Counterstatement Resp. ¶ 18.) Thompson attests that he "provided proof of funds to [LOGS], because [PHH's] acceptance of the offer was *conditional* upon such proof." (Thompson Decl. ¶ 9 (emphasis added).)

---

[10] Although Wagner used the word "request" rather than "require" in the April 11, 2022 email and the April 18, 2022 email, he explicitly stated in the April 14, 2022 email that PHH "still require[d]" proof of funds. (ECF No. 29-9 at 50; ECF No. 29-15 at 2–3.) The only reasonable interpretation of these emails is that PHH required proof of funds for the formation of a contract. Plaintiffs concede this fact based on Thompson's own attestation that he subsequently "provided proof of funds to [LOGS], because [PHH's] acceptance of the offer was *conditional* upon such proof." (Thompson Decl. ¶ 9 (emphasis added).)

Second, the undisputed facts establish that PHH made its counteroffer to the Non-Party Borrowers—not Plaintiffs—because Wagner consistently emailed Thompson about the material terms of the proposed contract using email subject lines conveying that PHH understood the Non-Party Borrowers to be the contracting parties. In the subject line of each email that Wagner sent to Thompson concerning PHH's request or requirement that the contracting party provide proof of funds for the proposed short payoff, Wagner specifically *named* the Non-Party Borrowers. (*See* ECF No. 29-9 at 46–48, 50; ECF No. 29-15 at 2–3.) On April 11, 2022, Wagner responded to the short payoff offer conveyed by Thompson and indicated that PHH "requested" proof of funds and an inspection of the Subject Property. (ECF No. 29-15 at 2–3.) The subject line of this email was "Green, John and Shapiro, Traci"—the names of the Non-Party Borrowers. (*Id.* at 2.) On April 14, 2022, again using "Green, John and Shapiro, Traci" as the subject line, Wagner emailed Thompson, reiterating that PHH "required proof of funds in order to move forward." (*Id.*) In the April 18, 2022 email, Wagner made clear that PHH's proof-of-funds requirement concerned proof of the Non-Party Borrowers' funds because he used the email subject line: "*Green, John and Shapiro* | Proof of Funds." (ECF No. 29-9 at 50 (emphasis added).) These undisputed facts show that PHH made clear that before agreeing to the short payoff offer conveyed by Thompson, it required John Green and Tracy Shapiro's proof of funds.

Furthermore, Thompson's emails to Wagner indicate that Plaintiffs were not involved in the negotiations concerning settlement of the foreclosure action, and that PHH's counteroffer was made to the Non-Party Borrowers. The settlement negotiations began when PHH mailed the Conditional Approval to the Non-Party Borrowers on December 17, 2021. (ECF No 29-6; Pls.' Counterstatement ¶ 5.) Thompson's initial March 30, 2022 email requested converting that short sale offer into a short payoff "For Settlement Purposes" and was prefaced by a subject line that

explicitly referenced a filing alert in the Foreclosure Action to which the Non-Party Borrowers—not Plaintiffs—were parties. (ECF No. 29-13 at 3 (March 30, 2022 email from Thompson to Nichole Rizzo at Plaintiffs' counsel under the subject line "Re: NYSCEF Alert: Suffolk - Real Property - Mortgage Foreclosure - Residential - Entry of Order/Judgment 621133/2016 (PHH Mortgage Corporation - v. - John Green et al).").) After Wagner, acting on PHH's behalf, sought clarification about whether "the borrower[s] [are] looking to sell or keep the property," Thompson replied by email on April 8, 2022, using the Non-Party Borrowers names in the subject line and stating that, under the proposed short payoff, the "*borrower* keeps the property." (*Id.* at 2 (emphasis added).) Thompson again used the Non-Party Borrowers' names in the subject line of the April 8, 2022 email informing LOGS that he or his assistant could be contacted by PHH regarding the requested proof of funds. (*Id.*)

These undisputed facts squarely contradict Plaintiffs' argument that PHH was aware that Thompson was representing Plaintiffs, rather than the Non-Party Borrowers, in the email negotiations to settle the Foreclosure Action with a short payoff. (*See* Opp'n at 3, 5–6.) Plaintiff HDP's name only arose in the settlement negotiations *after* Wagner's April 18, 2022 email communicating PHH's counteroffer, which required the Non-Party Borrowers to show proof of funds. Moreover, Plaintiff HDP was only referenced indirectly because Thompson provided HDP's TD Bank statement to Wagner at some point between April 18, 2022 and April 25, 2022 as "proof of funds." (ECF No. 29-9 at 47; *see also id.* at 46–50.) On April 25, 2022, Wagner emailed Thompson stating that "we require [proof of funds] to be in a PDF, and [the proof of funds] is unable to be reformatted," and informed Thompson that LOGS would "forward" any PDF documenting proof of funds to "our client as soon as we receive it." (*Id.* at 47.) There is no admissible evidence in the record showing that, after Thompson provided HDP's TD Bank

statement to Wagner, either PHH or its counsel communicated to Thompson or Plaintiffs that the proof of HDP's funds was sufficient for the formation of a contract between PHH and Plaintiffs for a short payoff of the Subject Property.[11]

Plaintiffs have failed to show how the record raises a question of fact as to whether PHH should have known that Thompson was communicating on behalf of Plaintiffs, rather than the Non-Party Borrowers, because Plaintiffs held the deed to the Subject Property at the time of the email correspondence between Thompson and Wagner. (*See* Opp'n at 3.) There is no dispute that Thompson never identified Plaintiffs by name in either the subject line or body of any of the emails he sent to PHH, but rather explicitly referenced only the Non-Party Borrowers names as detailed at length above. Moreover, the settlement negotiations began on December 17, 2021, when PHH sent the Non-Party Borrowers the Conditional Approval. (Pls.' Counterstatement ¶ 5.) Although the parties dispute when the negotiations ended, neither party has provided any admissible evidence showing that PHH continued to participate in the negotiations after May 3, 2022, when Thompson emailed HDP's TD Bank statement in PDF format to Wagner for the purpose of sharing the document with PHH. (*See* ECF No. 29-9 at 47; Pl.'s Counterstatement ¶ 15; Defs.' Counterstatement Resp. ¶ 23.) However, it is undisputed that the deed conveying the Subject Property to HDP was not recorded until more than one month later, on June 29, 2022. (*See* ECF No. 29-10 at 3.) Plaintiffs point to no evidence in the record raising a question of fact as to whether PHH was aware that the Non-Party Borrowers signed a deed transferring their

---

[11] As discussed above, Wagner attests that LOGS "advised that [PHH] denied the short pay offer" on May 17, 2022, but this statement is hearsay, and PHH has not shown that it falls within any exception to the hearsay rule. *See supra*, Discussion § I.B (discussing Wagner Decl. ¶ 12).) Because PHH has failed to show that this attestation is evidence that would be admissible at trial, I do not consider it in resolving PHH's Motion for Summary Judgment.

interest in the Subject Property to Plaintiffs until June 29, 2022, when the deed was recorded with the Suffolk County Clerk's Office. Plaintiffs thus fail to meet their burden to identify evidence raising a question of fact as to whether PHH was aware that Thompson was negotiating a short payoff on behalf of Plaintiffs, rather than the Non-Party Borrowers.

Third, the undisputed record demonstrates that the Non-Party Borrowers did not accept PHH's counteroffer because the Non-Party Borrowers never provided PHH with the required proof of *their* funds. As discussed, undisputed evidence in the record, specifically Wagner's April 18, 2022 email, which advised Thompson of PHH's conditional approval and request for proof of funds, was sent with the unambiguous subject line, "Green, John and Shapiro | Proof of Funds." (Defs.' Counterstatement ¶ 13 (citing ECF No. 29-9 at 50).) It is undisputed that the Non-Party Borrowers' proof of funds was *never* provided to PHH. Thus, the Non-Party Borrowers did not accept PHH's counteroffer.

Fourth, the undisputed record shows that no enforceable contract between PHH and Plaintiffs was formed because there was no meeting of the minds or manifestation of mutual assent "with respect to all material terms" of the purported contract. (*See* Opp'n at 3–4; Mem. at 12–16.) Most significantly, the undisputed record shows that PHH and Plaintiffs did not have a meeting of the minds concerning either the identities of the parties to the contract or whose proof of funds was required for PHH to agree to the proposed short payoff offer. (*See* Mem. at 15–14.) Moreover, Plaintiffs fail to point to any evidence in the record raising a question of fact as to whether the parties agreed to a number of the terms material to a real estate contract, including, "the time and terms of payment, the required financing, the closing date, the quality of title to be conveyed, the risk of loss during the sale period, and adjustments for taxes and utilities," *S. Shore Ests., Inc.*, 217 N.Y.S.3d at 140 (citing *Cohen*, 167 N.Y.S.3d at 529); *see also Argent*

*Acquisitions, LLC*, 990 N.Y.S.2d at 3 (recognizing the " identity of the parties and the parcel of real estate to be sold are material" terms and that "a writing to convey real estate must provide for a closing date, the quality of title to be conveyed, adjustments for taxes and risk of loss").

Plaintiffs rely on *George Backer Management Corporation* to argue that PHH has failed to rebut "the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties," but that case is distinguishable. (Opp'n at 6–7.) In *George Backer*, the parties did not dispute that a written contract had been formed. 46 N.Y.2d at 218–19. Furthermore, the plaintiff in that case sought reformation of the contract on the grounds of "mutual mistake or fraudulently induced unilateral mistake." *Id.* In this action, the parties dispute whether PHH and Plaintiffs ever formed a contract in the first place and whether such a contract is enforceable, and Plaintiffs seek enforcement, not reformation, of the alleged contract.

For all of the aforementioned reasons, Plaintiffs fail to identify any evidence in the record giving rise to a material question of fact as to whether PHH entered into any enforceable contract for the short payoff of the Subject Property in order to resolve the Foreclosure Action to which PHH and the Non-Party Borrowers were parties. The undisputed record shows both that PHH never accepted any short payoff offer communicated by Thompson and that PHH never agreed with any party to the material terms of such a contract—whether between PHH and the Non-Party Borrowers, PHH and Plaintiffs, or PHH and both Plaintiffs and the Non-Party Borrowers. PHH therefore succeeds on its first two arguments for summary judgment on the breach of contract claim—that there was no acceptance as required for a short payoff contract and that there was no meeting of the minds as to material terms of the purported contract. Therefore, I do not address PHH's third argument that Thompson faced conflicts of interest that precluded him from representing both the Non-Party Borrowers and Plaintiffs in the short payoff negotiations or

PHH's fourth argument that the record does not give rise to a question of fact as to whether Plaintiffs are third-party beneficiaries of any contract for a short payoff of the Subject Property.

### C.    The Purported Contract Does Not Satisfy New York's Statute of Frauds

PHH argues that even if there is a question of fact as to whether it entered into a contract with Plaintiffs, any purported contract between PHH and Plaintiffs is unenforceable and void under New York's Statute of Frauds. According to PHH, the emails between Wagner and Thompson do not reference the Subject Property's address, lot number, metes and bounds, or otherwise describe the Subject Property in any way, and do not contain any of the language customary to a real estate transaction, including "what happens if the proof of funds is inadequate/unacceptable, time for payment to be made, the quality of title to be conveyed once payment is made, adjustments for taxes, and risk of loss." (*Id.* at 15.)

Plaintiffs fail to make any arguments in opposition to PHH's Motion for Summary Judgment on the Statute of Frauds claim. (*See* Opp'n.) "[W]here a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived—or, more precisely, *forfeited*." *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (emphasis in original). Plaintiffs have forfeited any arguments relating to the Statute of Frauds claim in light of their failure to make any arguments at all in opposition to those raised by PHH.

"Under New York law, transactions related to real estate must be in writing, or are otherwise barred by the Statute of Frauds." *Hector v. Hector*, No. 22-cv-5990, at *3 (S.D.N.Y. Sept. 15, 2023); *see also* N.Y. Gen. Oblig. Law § 5-703(1). "Generally, to satisfy the Statute of Frauds, there must be a writing containing all material terms of the alleged contract." *Hector*, 2023 WL 6038025, at *3. As discussed earlier, in a real estate transaction, the "identity of the

parties and the parcel of real estate to be sold are material" terms. *Argent Acquisitions, LLC*, 990 N.Y.S.2d at 3.

As discussed, the undisputed emails between Wagner, writing on behalf of PHH, and Thompson show that there was no meeting of the minds regarding material terms of the purported contract for the short payoff sale of the Subject Property, including the identities of the parties and the source of funds. Since there was no meeting of the minds as to all material terms, the emails cannot serve as an enforceable contract under the Statute of Frauds. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 2021 WL 3727801, at *46 (S.D.N.Y. Aug. 23, 2021) ("[E]ven if email correspondence between the parties could create a binding obligation . . . it could do so only if [it] reflected an agreement between the parties on all of the material terms of a transaction. In the absence of agreement on material terms, there is no contract.") Moreover, even if the email correspondence between Thompson and Wagner could constitute a binding contract, it fails to address the "identity of the parties and the parcel of real estate to be sold," which are "material" terms to a real estate contract. *Argent Acquisitions, LLC*, 990 N.Y.S.2d at 4; *see also Hector*, 2023 WL 6038025, at *3.

D.  Conclusion

The undisputed facts show that PHH did not enter into a contract for the short payoff of the Subject Property and that, even if it did, the contract was unenforceable under the New York Statute of Frauds. Plaintiffs therefore have failed to raise a question of fact as to the existence of an agreement—the first element of a breach of contract claim under New York law. *See Harsco Corp*, 91 F.3d at 348; *Piuggi*, 739 F. Supp. 3d at 167; *TIG Ins. Co.*, 2025 WL 674269, at *3. Because Plaintiffs cannot establish at trial all of the elements required to prove a breach of contract claim, PHH merits summary judgment on this claim.

### III.    Plaintiffs' Breach of the Covenant of Good Faith and Fair Dealing Claim

PHH argues that Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails because there was no contract formed between PHH and Plaintiffs. (Mem. at 16–17.) PHH further argues that this claim is redundant of Plaintiffs' breach of contract claim and therefore must be dismissed. (*Id.* at 17.)

Plaintiffs fail to make any arguments in opposition to the Motion for Summary Judgment on their claim for breach of the covenant of good faith and fair dealing. (*See* Opp'n.) Accordingly, any such arguments are forfeited. *See In re Demetriades*, 58 F.4th at 54.

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *see also Karsch v. Blink Health Ltd.*, No. 17-cv-3880, 2021 WL 2075716, at *3 (S.D.N.Y. May 24, 2021) ("It is well established that a plaintiff bringing a breach-of-contract claim cannot also bring a claim for breach of the covenant of good faith and fair dealing . . . arising from the terms of the contract.") Accordingly, "a claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002).

Here, Plaintiffs assert identical facts in support of their claims for breach of contract claim and breach of the implied covenant of good faith and fair dealing. The Complaint does not plead any facts supporting the claim for breach of the implied covenant of good faith and fair dealing that are separate from the facts pled in support of the breach of contract claim. (*See generally* Compl.) Moreover, Plaintiffs fail to make any arguments in their opposition brief that

33

concern the claim for breach of the implied covenant of good faith and fair dealing independent of the breach of contract claim. (*See generally* Opp'n.)

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is entirely redundant of the breach of contract claim and must be dismissed. *Cruz v*, 720 F.3d at 125; *Karsch*, 2021 WL 2075716, at *3.[12] Accordingly, I grant PHH summary judgment on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

## IV.    Specific Performance

Courts in this Circuit disagree about whether specific performance is an independent cause of action or solely a remedy to a breach of contract claim. *See supra* note 3; *Nortek Inc.*, 2025 WL 588226, at *7; *Spectre Air Cap., LLC*, 737 F. Supp. 3d at 207 n.4. To the extent it is limited to serving as a remedy for breach of contract, because PHH merits summary judgment on the breach of contract claim, the remedy of specific performance is not available to Plaintiffs. To the extent specific performance is properly considered a separate claim, Plaintiffs fail to raise a question of fact precluding summary judgment for PHH on such a claim.

PHH argues that specific performance is not warranted here because (1) there was no contract between the Plaintiffs and PHH, and (2) Plaintiffs have not shown they did not possess any other adequate remedy at law. (Mem. at 17.) Plaintiffs argue that specific performance is warranted since they and PHH were parties to a contract for a short payoff and "specific

---

[12] I use the term "dismissed" rather than "denied" because the claim is properly dismissed under New York law. *See Harris*, 310 F.3d at 83 (affirming the district court's dismissal of a claim on summary judgment "[b]ecause th[e] claim was properly dismissed under either New York law or California law")

34

performance of a contract is required where there has been an agreement and reliance on the agreement." (Opp'n at 5.)

Here, summary judgment for PHH is warranted on any separate claim for specific performance. "Under New York law, specific performance may be granted when (1) a valid contract exists; (2) the plaintiff has substantially performed under the contract, and is willing and able to perform any remaining obligations; (3) the defendant is able to perform its contractual obligations; and (4) the plaintiff has no adequate remedy at law." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 486 (S.D.N.Y. 2022). As discussed above, the undisputed facts in the record show that PHH and Plaintiffs did not form a contract. In the absence of a genuine dispute as to any material fact concerning whether there was a valid contract for the short payoff of the Subject Property, Plaintiffs' request for specific performance fails. Accordingly, I grant PHH summary judgment on Plaintiff's claim for specific performance.

## V.    Attorneys' Fees

PHH argues that since all of Plaintiffs' claims fail, Plaintiffs are not entitled to attorneys' fees. (Mem. at 18.) PHH further asserts that even if Plaintiffs were to prevail on one of their claims, Plaintiffs still would not be entitled to attorneys' fees since there is no agreement or statute that entitles Plaintiffs to attorney's fees. (*Id.* at 18.) Plaintiffs fail to make any argument in opposition to PHH's Motion for Summary Judgment on their attorneys' fees claim. (*See* Opp'n.)[13] Accordingly, any such arguments are forfeited. *See In re Demetriades*, 58 F.4th at 54.

"It is well settled in New York that a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule." *Duffy v. Ill.*

---

[13] Plaintiffs frame their request for attorneys' fees as a "claim" rather than a remedy but cite no law for that proposition. (*See* Compl., ECF No. 1-2 at 5.)

*Tool Works, Inc.*, No. 15-cv-7407, 2024 WL 4275247, at *9 (E.D.N.Y. Sept. 24, 2024); *see also Mount Vernon City Sch. Dist. v. Nova Cas. Co.*, 968 N.E.2d 439, 447 (2012). Because none of Plaintiffs' claims survive summary judgment, Plaintiffs cannot be prevailing parties in this action as a matter of law. Furthermore, even if Plaintiffs were prevailing parties, Plaintiffs have not shown any "statute, agreement or court rule" that would entitled them to an attorneys' fees award. *Duffy*, 2024 WL 4275247, at *9. Accordingly, I grant PHH summary judgment as to Plaintiff's attorneys' fees claim.

## CONCLUSION

For the reasons set forth above, I grant PHH's Motion for Summary Judgment in its entirety.

Dated: Central Islip, New York
July 3, 2025

 _/s/ Nusrat J. Choudhury_____
NUSRAT J. CHOUDHURY
United States District Judge